**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Robert Lee BEASLEY, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 20, 2000.

Filed Nov. 30, 2000.

Michael S. Marshall, Clearfield, for appellant.

William A. Shaw, Assistant District Attorney, Clearfield, for Com., appellee.

Before POPOVICH, FORD ELLIOTT and BECK, JJ.

BECK, J.:

¶ 1 Appellant, at age 17, was charged with robbery, theft and receiving stolen property. Following a negotiated guilty plea, he was sentenced to 3½ to 10 years in prison. On appeal he claims that the court erred in permitting him to be charged as an adult and further erred in denying his petition to transfer the matter to juvenile court. We vacate and remand.

¶ 2 Appellant entered a market, displayed a BB gun and demanded money. The clerk handed over cash and food stamps and appellant fled. The incident was captured on video and appellant, upon apprehension, admitted the crime.

¶ 3 We begin by reviewing the ramifications of charging a juvenile in either criminal court or juvenile court. Relatively recent changes in the law provide that a juvenile, age 15 or older, may be charged in criminal court as an adult if he commits one of several enumerated crimes and does so using a deadly weapon.[1] 42 Pa.C.S.A.

---

1. The law removes jurisdiction from the juvenile court and places it directly in criminal court by excluding certain conduct from the definition of "delinquent act."

The term [delinquent act] shall not include: Any of the following prohibited conduct where the child was 15 years of age or older at the time of the alleged conduct and

§ 6302. A deadly weapon is defined, for purposes of § 6302, as "any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." 18 Pa.C.S.A. § 2301.

¶ 4 If a juvenile is charged as an adult, he may petition the court to transfer his case to juvenile court. He then has the burden of establishing, by a preponderance of evidence, that the transfer will serve the public interest. 42 Pa.C.S.A. § 6322. Similarly, if charges are brought in the juvenile system, the Commonwealth has the option of filing a petition for a transfer to criminal court and must bear the burden of establishing that the transfer will serve the public interest. 42 Pa.C.S.A. § 6355. In deciding whether the public interest is served by a transfer under either scenario, the trial court considers the very same factors. Those factors include the impact on the victim and the community, the threat to public safety, the nature and circumstances of the offense, the degree of culpability, the adequacy and duration of dispositional alternatives and whether the child is amenable to treatment as a juvenile.[2] *Id.*

¶ 5 In this case, appellant consistently has asserted that the matter belonged in juvenile rather than criminal court.[3] The Commonwealth maintained

that adult charges were appropriate because appellant used a deadly weapon to commit the robbery. Appellant argued that a BB gun did not constitute a deadly weapon, therefore, juvenile charges were appropriate. Although some documents in the certified record refer to arguments and letter briefs submitted on this precise issue, none is present in the record. The only discussion we have before us is that set out in the parties' briefs and the trial court opinion.

¶ 6 The trial court states that it relied on *Commonwealth v. Williams*, 353 Pa.Super. 312, 509 A.2d 1292 (1986), to find that a BB gun satisfies the statutory requirement of a deadly weapon, thus warranting the jurisdiction of the criminal court in this case. In *Williams*, a panel of this court was asked "whether a carbon dioxide operated pellet gun is a firearm for purposes of § 9712" [Mandatory Minimum Sentencing Act, 42 Pa.C.S.A. § 9712]. Recognizing that previous cases held that pellet guns were not firearms for purposes of the Uniform Firearms Act ("UFA"), the *Williams* court nonetheless held that a pellet gun was a firearm for purposes of § 9712. In doing so, the court relied on *Commonwealth v. Sterling*, 344 Pa.Super. 269, 496 A.2d 789 (1985), which it described as acknowledging that "various definitions of 'firearms' exist for various purposes." *Williams, supra* at 1294.

¶ 7 Appellant suggests that rather than follow *Williams*, we should adhere to the holdings of previous cases, which found

a deadly weapon as defined in 18 Pa.C.S. § 2301 ... was used during the commission of the offense, which, if committed by an adult, would be classified as:
Robbery as defined in 18 Pa.C.S. § 3701(a)(1)(I), (ii) or (iii) (relating to robbery).
42 Pa.C.S.A. § 6302. Prior to the enactment of this provision in 1995, only murder charges went directly to criminal court. All others began in the juvenile system.

2. Amenability to treatment is determined by a number of relevant factors, including age, mental capacity, criminal sophistication, previous records, success or failure of previous

attempts at rehabilitation, the likelihood of rehabilitation prior to expiration of juvenile court jurisdiction, probation or institutional reports and any other relevant factors. 42 Pa.C.S.A. § 6355(a)(4).

3. In its opinion, the trial court states that appellant's issues are waived because he pled guilty. However, both appellant and the Commonwealth agree that issues relating to certification of juvenile cases are jurisdictional and, therefore, not waivable. *Commonwealth v. Potts*, 449 Pa.Super. 306, 673 A.2d 956 (1996).

that BB guns are not firearms. *See, e.g.,* *Commonwealth v. Lowary,* 463 Pa. 408, 345 A.2d 170 (1975) (spring activated hand gun which shoots small steel pellets is not a firearm); *Commonwealth v. Schilling,* 288 Pa.Super. 359, 431 A.2d 1088 (1981) (carbon dioxide pellet gun not a firearm under UFA).

¶ 8 Neither line of cases directly controls. *Williams* and *Sterling* were decided under the Sentencing Code, while *Lowary* and *Schilling* addressed the UFA. Further, all of the cases sought to define the term "firearm." Here we must interpret "deadly weapon," a term that encompasses more than merely firearms. It also includes "any device designed as a weapon and capable of producing death or serious bodily injury," as well as "any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." 18 Pa.C.S.A. § 2301.

¶ 9 Upon review of the record, we find the trial court's blanket adoption of *Williams* inadequate. *Williams* does not control this case, and while the trial court may have found its reasoning persuasive, there is no analysis of the case or previous cases in the trial court's opinion. The trial court's choice of *Williams* over *Schilling* is not explained, nor is it supported by the record.

¶ 10 We note that the *Williams* court was interpreting a specific definition, to wit: "[a firearm is] any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive or the expansion of gas." *Williams, supra* at 1294 (quoting 42 Pa.C.S.A. § 9712). The *Williams* court explicitly found that the Commonwealth's evidence regarding the manner of operation of the BB gun was

sufficient to satisfy this statutory definition.[4]

¶ 11 Not only does the statute in this case present a different definition, there is no record evidence regarding the weapon appellant used. This lack of evidence hampers our review. There is no testimony on whether this weapon was capable of producing death or serious bodily injury, nor is there evidence regarding the manner in which it was used or intended to be used.[5]

¶ 12 We agree with the parties in this case that the issue is an important one. It has the potential to dictate whether a juvenile will face charges as an adult or a minor. At the very least, it determines who will have the burden of proving that a transfer from either court is in the public interest.

¶ 13 The posture of this case is unique. Appellant is not seeking to withdraw his guilty plea; instead he asks us to vacate judgment of sentence and remand the matter so that it may be transferred to juvenile court. But the inadequacy of the records precludes us from doing so. Despite the parties' request that we definitively decide whether a BB gun satisfies the deadly weapon requirement of § 6302, we decline to do so on this record. Instead, we are compelled to vacate the judgment of sentence and remand the matter for a new trial at which both parties will be required to establish their position on the record. The trial court is instructed to make findings of fact and conclusions of law so that a complete record is made. In the event appellant is once more dissatisfied with the outcome, he may seek review by filing a notice of appeal to this court. Thereafter, this court will have a comprehensive record with which to accomplish such review.

¶ 14 Judgment of sentence vacated; matter remanded for proceedings consis-

---

4. The *Sterling* court used the same analysis for the same statute. *Sterling, supra.*

5. Apparently, the store clerk thought the BB gun was a .45 pistol. It is not clear whether appellant pointed the gun at the clerk or merely showed it to her.

tent with this Opinion.[6]  Jurisdiction relinquished.

**In re N.C., N.E.C.**

6.  Typically, our resolution of appellant's first issue would make resolution of his second unnecessary.  Here, appellant's alternative claim is that even if his case should have begun in criminal court, the trial court erred in denying his petition for a transfer to juvenile court.  If, on remand, the trial court reaches the same conclusion with respect to the deadly weapon issue, the propriety of the trial court's transfer ruling will be relevant.  For that reason, we will address appellant's second claim.

Our review of the record prompts us to disagree with appellant.  It was appellant's burden to establish that the public interest would be served by the transfer.  The presumption, by operation of statute, was that the matter belonged in criminal court.  In light of that standard, and after thorough review of the transfer hearing transcript, we find no error on the part of the trial court in concluding that appellant did not meet his burden.

If, on remand, the trial court decides that appellant's case should be before the juvenile court, it will be the Commonwealth's burden to prove that a transfer to criminal court would serve the public interest.  The change in the burden of proof may or may not prompt a different result; that is not an issue we decide here.  In any event, we explicitly affirm the trial court's order that appellant failed to prove that a transfer from criminal court to juvenile court was appropriate.  Our remand is for the purpose of establishing whether criminal or juvenile court jurisdiction is appropriate in the first instance.